IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BLEMEL TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:15-cv-134-RWS-RSP |
| | § | |
| NATIONAL INSTRUMENTS | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM ORDER**

Pending before the Court is Defendant National Instruments Corporation's ("National") Motion to Transfer. (Dkt. No. 14.) National contends that this case should be transferred to the Western District of Texas. Plaintiff Blemel Technologies, LLC ("Blemel") opposes transfer. The Court has considered all the factors and weighed all the evidence and finds that transfer is not warranted.

## BACKGROUND

Blemel has asserted U.S. Patent No. 6,938,177 (the "'177 patent") against National. The '177 patent covers a "multi-chip module smart controller." ('177 patent, at [54].) Kenneth Blemel, the inventor of the '177 patent, testified at the hearing and described the invention as a controller that can freely be reprogrammed in the field to work with various inputs and outputs. (*See* Dkt. No. 27 15:25–16:14; '177 patent col. 3, ll. 50–55.) The patent analogizes the invention to existing devices. It states: "the invention is similar to a 'system-on-a-chip' and appears similar to a chip in size, weight and physical configuration, but through a tightly coupled [multi-chip modules] implementation, transcends the functional capability of a single integrated circuit." ('177 patent col. 3, ll. 55–60.)

1

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first step in a Court's transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

If that threshold is met, the Court then analyzes public and private factors relating to the convenience of parties and witnesses and the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more

convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]" and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Doc. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

**A.    Proper Venue**

The parties do not dispute that venue is proper in either the Eastern District of Texas or the Western District of Texas.

**B.    Private Interest Factors**

**1.    Relative Ease of Access to Sources of Proof**

National states that its documents are located in the Western District of Texas and contends that Blemel has not identified any documents located in the Eastern District of Texas. (Dkt. No. 14 at 4–5.) Blemel asserts in response that its documents are located in New Mexico and New York because the invention was developed in New Mexico and General Patent Corp., the company responsible for licensing Blemel's invention, is located in New York. (Dkt. No. 17 at 4–5; Dkt. No. 27 at 23:21–24:23.)

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)

(citation omitted). In this case, however, the evidence shows that a substantial part of the proof is located with Blemel in Albuquerque, New Mexico. Mr. Blemel testified, and the other evidence confirms, that Albuquerque is similarly accessible from Marshall and Austin. Therefore, the Court finds this factor favors transfer only slightly.

Mr. Blemel's testimony shows substantial evidence is in New Mexico for three reasons. First, Mr. Blemel said he began developing the invention in New Mexico during the 1980's. This suggests documents from that era are located in New Mexico. (*See* Dkt. No. 27 at 17:2–4 ("The invention was arrived upon because of contact with the Air Force Research Lab in Albuquerque, New Mexico, at Kirkland Air Force Base.").) Second, Mr. Blemel testified that he worked closely with the Air Force in New Mexico. He said he worked with James Leitch, an Air Force engineer, and received support for his invention from the Air Force. This likewise suggests that documents are located in New Mexico. (*See* Dkt. No. 27 at 18:7–11 ("And then it was agreed for our company, for my eminence, in being able to do programmability in logic gates to create a – and commercialize this outer space product – project and give them the ability to have an improved product for controlling things in space."); Dkt. No. 27 at 36: 9–11 ("It means that in corporations and by the Government, two entities get together and provide facilities, humans, training, and money to create – to do research and develop a product.").) Finally, Mr. Blemel suggested he would need only targeted discovery from National. He testified that he obtained the information necessary to determine infringement by buying the accused devices from public sources and testing their operation. (*See* Dkt. No. 27 at 19:22–24 ("We obtained some of their products to simply see if the advertising paid out, that it actually did that, that we could do the things that the advertising said.").) This suggests National will need to provide fewer sources of proof at trial than in an ordinary patent infringement case.

### 2. Cost of Attendance for Willing Witnesses

The Court considers the convenience of the party and non-party witnesses, and the convenience of non-party witnesses has the greater weight. *See Genentech*, 566 at 1343; *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). The Court also considers "the relevance and materiality of the information the witness may provide" but the Court but does not require the moving party to identify "key witnesses" or show "the potential witness has more than relevant and material information . . . ." *Genentech*, 566 at 1343–44.

National has identified employee and former employee witnesses with knowledge about the design, development, and sale of the accused products. (Dkt. No. 14-1 ¶5; Dkt. No. 14-2 ¶7.) National states these witnesses live in Austin, Texas and would find a trial in Austin significantly more convenient. (Dkt. No. 14-1 ¶5; Dkt. No. 14-2 ¶7.) Blemel argues Austin is not more convenient for any of its witnesses. Blemel states Austin is not closer than Marshall for witnesses in New Mexico and argues Austin is farther than Marshall for witnesses in New York. (Dkt. No. 17 at 9.)

At the hearing, Blemel further testified that he has obtained permission from the Air Force to allow Mr. Leitch to attend trial in Marshall. (*See* Dkt. No. 27 at 22:10–11 ("Yes. I have checked with their counsel at the Air Force Research Lab, and they're very willing.").) Blemel also identified three National employee or former employee witnesses located near or in the Eastern District of Texas. Blemel contends these witnesses have knowledge that is material to the case. National, in response, noted that it has obtained declarations from its employee and

former employees stating they did not participate in the "design and development" or "creation and development" of the accused devices. (Dkt. No. 21-1 ¶5; Dkt. No. 21-2 ¶6; Dkt. No. 21-2 ¶5.) National suggests these declarations show the employee and former employees identified by Blemel do not have material knowledge.

The Court finds this factor is neutral as to transfer. The Court agrees with National that the location of its witnesses mostly favors transfer. The Court, however, notes this convenience is balanced against the convenience to Mr. Leitch. Mr. Leitch possesses extremely material testimony to the case because he was present in New Mexico when the invention was initially developed by Mr. Blemel. (*See* Dkt. No. 27 at 18:3–11; *see also* Dkt. No. 27 at 25:7–10 (stating Blemel Technologies will show patentability).) Because Mr. Leitch works for the Air Force and neither the Eastern District of Texas nor Western District of Texas has compulsory process over him, the Court finds the convenience to Mr. Leitch is a material factor. The Court also weighs the fact that movant did not produce any admissible evidence on this issue in support of its motion, despite its burden of proof. This fact, together with the former employee witnesses in or near this district and Mr. Leitch, persuade that Court that issue does not favor transfer.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Federal Rule of Civil Procedure 45 provides that the Court may command a person to attend trial in Marshall if that person "resides, is employed, or regularly transacts business in person" in Texas and "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). The Court may also command a person to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses do not normally require compulsory process, and the Court's

analysis of this factor focuses on third-party witnesses who may require compulsory process to attend trial.

The Court finds this factor is neutral as to transfer because National has not shown that an unwilling witnesses would "incur substantial expense" if required to attend trial in Marshall. Indeed, as Blemel has shown, any potential travel expenses would be minimal. About 275 miles separate Marshall from Austin and an average trip between the cities costs less than $100. (*See* Dkt. No. 17 at 8.)

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The parties agree that no practical problems affect transfer. (*See* Dkt. No. 17 at 10.)

## C. Public Interest Factors

### 1. Local Interest in Having Localized Interests Decided at Home

The Court finds this factor weighs in favor of transfer but slightly. National is based in Austin, thus the Court finds the Western District of Texas has the greatest interest in this case. However, the Court notes the Eastern District of Texas also has an interest in this case. For example, National holds courses in this District that teach users how to program the accused device. (Dkt. No. 17 at 12.) National also has employees in this District who have relevant knowledge on sales of the accused device. (*See* Dkt. No. 21-3 ¶6.)

### 2. Administrative Difficulties Flowing From Court Congestion

The Court finds this factor is neutral as to transfer because the Eastern District of Texas and Western District of Texas have similar times to trial. The Federal Circuit has held this factor is "speculative." *Genentech*, 566 F.3d at 1347. A short difference in time to trial does not seriously affect the transfer analysis.

3.  **Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

The parties agree that these factors do not affect transfer. (Dkt. No. 14 at 7.)

## CONCLUSION

A motion to transfer is granted only upon a showing that one venue is "clearly more convenient" than another. *See Nintendo Co.*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342. An analysis of the relevant factors shows that the Western District of Texas is not "clearly more convenient." National's Motion to Transfer (Dkt. No. 14) is **DENIED**.

**SIGNED this 28th day of March, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE